
FILED
CLERK, U.S. DISTRICT COURT
11/6/2018
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CW___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORA B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 8:18-cv-00051-MAA <br><br> **ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |

Plaintiff has filed a Complaint seeking review of the Commissioner's final decision denying her application under Title II of the Social Security Act. This matter is fully briefed and ready for decision. For the reasons discussed below, the Commissioner's final decision is reversed, and this matter is remanded for further administrative proceedings.

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**ADMINISTRATIVE BACKGROUND**

On October 1, 2013, Plaintiff filed an application under Title II for a period of disability and Disability Insurance Benefits, alleging disability beginning on January 14, 2013. (Administrative Record ["AR"] 24, 188-89.) Plaintiff alleged disability due to "peripheral artery disease" and "diabetes type 2." (AR 76.) After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 130-31.) At a hearing held on July 20, 2016, Plaintiff appeared with counsel, and the ALJ heard testimony from Plaintiff, a medical expert, and a vocational expert. (AR 44-74.)

In a decision issued on November 3, 2016, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation. (AR 24-33.) Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (AR 26.) She had the following "severe" impairments: coronary artery disease with a history of myocardial infarction and coronary artery bypass graft; mild ischemic cardiomyopathy; chronic obstructive pulmonary disease with asthma; diabetes mellitus status post toe amputation; hypertension; and degenerative disc disease of the lumbar spine. (*Id.*) She did not have an impairment or combination of impairments that met or medically equaled the requirements of one of the impairments from the Commissioner's Listing of Impairments. (AR 26-28.) She had a residual functional capacity to perform light work with additional limitations (AR 28-29), thus enabling her to perform her past relevant work as a receptionist and customer service representative (AR 32). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (AR 33.)

On November 9, 2017, the Appeals Council denied Plaintiff's request for review. (AR 3-8.) Thus, the ALJ's decision became the final decision of the Commissioner.

///

# DISPUTED ISSUE

The parties raise a single disputed issue: "[w]hether the ALJ properly considered the opinion evidence in accordance with the regulations." (Joint Stipulation ["Jt. Stip."] at 4.)

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Lingenfelter*, 504 F.3d at 1035. Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

# DISCUSSION

The parties specifically dispute whether the ALJ properly gave "little weight" to the opinions of two treating physicians, Dr. Kolodenker and Dr. Bebawi. (Jt. Stip. at 4.) For the reasons discussed below, reversal and remand for further administrative proceedings are warranted with respect to Dr. Bebawi's opinion. It is therefore unnecessary to address Dr. Kolodenker's opinion. *See Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) (declining to decide alternate issues

where reversal otherwise is warranted); *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 n.1 (9th Cir. 1997) (same).

### A. Treating Physician's Opinion.

#### 1. Legal Standard.

A treating physician's opinion is entitled to special weight because he or she is "most able to provide a detailed, longitudinal picture" of a claimant's medical impairments and bring a perspective to the medical evidence that cannot be obtained from objective medical findings alone. *See* 20 C.F.R. § 404.1527(c)(2); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2).

If the treating physician's opinion is uncontroverted by another doctor's opinion, it may be rejected only for "clear and convincing" reasons. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If a treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. *See id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, Dr. Bebawi's opinion was controverted by the opinions of a testifying medical expert (AR 51), an examining physician (AR 531), and two state agency review physicians (AR 85-86, 97-99). Thus, the ALJ was required to articulate

4

specific and legitimate reasons based on substantial evidence in the record before rejecting Dr. Bebawi's opinion.

### 2. Background.

Dr. Bebawi became Plaintiff's treating physician in 2014. (AR 1281.) Around that time, Plaintiff had two surgeries: in April 2013, she had amputations of all of her left toes and one of her right toes because of necrosis from diabetes (AR 365); and in July 2014, she had a four-vessel coronary artery bypass graft following a cardiac arrest (AR 663, 1042).

Dr. Bebawi treated Plaintiff monthly as her primary care physician. (AR 1279.) He described Plaintiff's problems as a "highly complex medical condition" that included the following: a disorder of the connective tissue, insulin-dependent diabetes mellitus, renal insufficiency syndrome, hypertension, congestive heart failure, status-post coronary artery byass graft, and opioid dependence. (AR 893.) Dr. Bebawi also referred Plaintiff for complaints of lower-back pain to a specialist who diagnosed "mild multilevel spondylosis and degenerative changes from L3-L5." (AR 1300.)

In May 2016, Dr. Bebawi completed a "Physical Impairment Questionnaire" describing Plaintiff's abilities. (AR 1279-81.) In relevant part, Dr. Bebawi wrote that Plaintiff had chronic fatigue (AR 1279); could sit, stand, or walk for five minutes at a time (*id.*); could not lift any weight in a competitive work situation (AR 1280); and would be absent from work more than four times per month (*id.*). He concluded that Plaintiff was not capable of working on a sustained basis. (*Id.*)

The ALJ gave "little weight" to Dr. Bebawi's opinion because "the level of limitation opined is grossly inconsistent with the objective medical record," and identified three examples. (AR 32.) As discussed below, this reasoning was not a specific and legitimate reason based on substantial evidence in the record.

///

### 3. Analysis.

A treating physician's opinion "must be 'read in the context of the overall diagnostic picture' the provider draws." *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). Thus, selective reliance on isolated portions of the medical record that do not accurately reflect the overall diagnostic picture will not meet the standard of substantial evidence to reject a treating physician's opinion. *See Ghanim*, 763 F.3d at 1162; *Holohan*, 246 F.3d at 1201 ("[W]e cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'") (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).

The ALJ specified three examples for why Dr. Bebawi's opinion was "grossly inconsistent with the objective medical evidence of record." (AR 32.) First, the ALJ found that Dr. Bebawi's opinion was inconsistent with treatment notes showing "full motor strength in spite of the need for pain management treatments." (AR 32 [citing AR, Exhibit 44F].) The cited exhibit includes evidence showing that, while she was receiving pain management treatment in early 2016 for her lower back, Plaintiff displayed normal strength. (AR 1293, 1297, 1302, 1306.) The Court is not convinced, however, that Plaintiff's demonstration of motor strength in a controlled and limited setting such as a pain management session is grossly inconsistent with Dr. Bebawi's opinion that Plaintiff, partly due to fatigue, should not lift "in a competitive work situation." (AR 1279, 1280.) The two contexts are entirely different. *See Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998) (holding that a claimant's unremarkable orthopedic examination findings, such as her normal reflexes and grip strength, was not necessarily probative of "her ability to undertake sustained work activity"); *see also* Social Security Ruling 96-8p, 1996 WL 374184, at *2 (sustained work activity contemplates a claimant's ability to work "8 hours a day, for 5 days a week, or an equivalent work schedule").

///

Thus, this limited evidence did not give rise to a specific and legitimate reason to reject the treating physician's opinion.

Second, the ALJ found that Dr. Bebawi's opinion was inconsistent with evidence showing Plaintiff "has the capacity to go to the gym and ride her bike in spite of her foot surgeries." (AR 32 [citing AR, Exhibit 14F].) The cited exhibit includes medical evidence showing that, in early 2014, Plaintiff was able to ride a bicycle, exercise at a gym for an hour, and sit for 15 minutes. (AR 501, 504, 507.) The probative value of this medical evidence, however, is negligible in light of the fact that a few months later in July 2014, Plaintiff had a cardiac arrest and a four-vessel coronary artery bypass graft. *See Magallanes*, 881 F.2d at 755 ("Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports."). Later medical reports reflect, for example, that Plaintiff experienced "progressively worse" shortness of breath (AR 753); that her "functional capacity was below average" (AR 827); that she could not complete a stress echocardiogram test because of "general fatigue" (*id.*); that "she [could not] walk without help" (AR 1084); and that she had an antalgic gait (AR 1293, 1306). Thus, in the context of the overall medical record, Plaintiff's ability to exercise for a limited time just before an extreme medical episode did not give rise to a specific and legitimate reason to reject the treating physician's opinion.

Third, the ALJ found that Dr. Bebawi's opinion was inconsistent with evidence showing Plaintiff's heart functioning "based on her ejection fraction of 55-60% is within normal range in spite of previously suffering acute failure and requiring coronary artery bypass graft." (AR 32 [citing AR 826-29].) This number, however, is not necessarily representative of the overall diagnostic picture because, as Plaintiff points out, the record reflects lower ejection fraction rates at other times. (AR 1068 [45% in August 2014]; AR 1215 [40-45% in February 2015]; AR 1217 [31% in February 2015].) In any event, even if the highest ejection fraction rate, as

7

cited by the ALJ, were to be accepted as representative, it still was not a specific and legitimate basis to reject the overall diagnostic picture that Dr. Bebawi drew. Dr. Bebawi did not base his opinion only on Plaintiff's heart condition. Rather, he based it on Plaintiff's "highly complex medical condition" that included several other distinct impairments such as diabetes, disorder of the connective tissue, renal insufficiency syndrome, hypertension, and severe back pain. (AR 1279.) Thus, evidence of Plaintiff's ejection fraction rate, as relevant to her heart condition, was not a specific and legitimate basis to reject Dr. Bebawi's opinion of Plaintiff's medical condition taken as a whole.

The Commissioner's arguments do not warrant a different result. The Commissioner argues that the ALJ appropriately rejected Dr. Bebawi's opinion because it was "so extreme as to be implausible." (Jt. Stip. at 20-21.) The ALJ, however, never characterized the opinion in that way. The Court therefore cannot consider it. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts.").

The Commissioner further argues that "substantial evidence" consisting of the opinions of other physicians (*i.e.*, the medical expert, the examining physician, and the non-examining physicians) supported the ALJ's decision to reject Dr. Bebawi's opinion. (Jt. Stip. at 14-17.) But even assuming for the sake of argument that this were true, the ALJ still would be required to give some indication that he considered Dr. Bebawi's opinion under the factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (recognizing that even when an ALJ decides that a treating physician's opinion is not entitled to controlling weight because it is inconsistent with substantial evidence, the ALJ still must evaluate the opinion under the regulatory factors, and that the failure to do so is itself reversible legal error). Although an ALJ is not required "to make an express statement that she considered all the factors outlined in 20 C.F.R. § 404.1527(c)," the ALJ's opinion still must contain some "indication"

8

that the factors were considered. *See Kelly v. Berryhill*, 732 F. App'x 558, 562 and n.4 (9th Cir. 2018). Because the ALJ's opinion contains no indication that these factors were considered, reversal would be required even if the other medical opinions, as the Commissioner argues, constituted substantial evidence.

In sum, the ALJ's decision to give little weight to Dr. Bebawi's opinion was not supported by specific and legitimate reasons based on substantial evidence in the record. Thus, reversal is warranted on this basis.

**B.     Remand for Further Administrative Proceedings.**

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Although the Court has found legal error as discussed above, essential factual issues remain outstanding. The discounted evidence raises ambiguities and factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter v. Colvin*, 806 F.3d 487, 496 (9th Cir. 2015); *see also Treichler*, 775 F.3d at 1101 (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (same where the record does not clearly demonstrate the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: Nov. 6, 2018

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE